The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
The Full Commission finds as facts and concludes as matters of law the following, which were agreed upon by the parties at the hearing, in a letter dated 21 November 1994, and in a Pre-trial Agreement dated 20 July 1994 as
STIPULATIONS
1. Plaintiff's average weekly wage, pursuant to a Form 22 wage chart received at the Industrial Commission on 28 November 1994, is $348.21, yielding a compensation rate of $232.15.
2. The deposition of plaintiff taken on 24 June 1994 is stipulated into evidence.
3. Plaintiff has received $1,810.00 in unemployment insurance compensation for the periods during 1993 when she was out of work.
4. A four page document labeled Defendant's Exhibit 1 is stipulated into evidence.
5. Records concerning plaintiff from the following medical providers are stipulated into evidence:
 a. Miller Orthopaedic Clinic records from 9/28/89 through 11/8/89;
 b. Arrowood Medical Center records from 11/14/88 through 8/25/92;
 c. Miller Orthopaedic Clinic records from 8/21/92 through 9/17/92;
d. Mercy South emergency room records for 2/5/93;
 e. Carolina Hand Center records from 2/9/93 through 2/23/93;
 f. Records of Dr. Nick E. Grivas from 3/1/93 through 10/11/93.
g. Mercy South records of 3/9/93.
************
The Full Commission rejects the findings of fact of the deputy commissioner and finds as follows
FINDINGS OF FACT
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and an employment relationship existed between the parties at all relevant times.
2. State Automobile Insurance Companies was the insurance carrier on the risk.
3. On 2 August 1992 plaintiff was a thirty-eight year old female with a twelfth grade education. Plaintiff had been employed for two years with defendant-employer. Her duties involved answering telephone calls at the switchboard, receiving orders, and other secretarial duties.
4. On Sunday, 2 August 1992, plaintiff received a call from Greg Spencer, her supervisor, directing her to report to work to assist with relocating the business.
5. Greg Spencer instructed plaintiff and a co-worker to unpack boxes of stock and to place cable connector parts in designated bins in the warehouse. These duties required that plaintiff and a co-worker push and pull five or six large waist-high boxes of cable connectors weighing approximately two hundred pounds each across a cement floor. Plaintiff then had to remove smaller boxes of cable connectors weighing from five to twenty-five pounds and hand them up to her co-worker who stood on a ladder placing the parts on shelves. Plaintiff performed these duties continuously for three and one-half hours. This was not plaintiff's regularly scheduled workday and plaintiff was not performing her regular secretarial duties.
6. Plaintiff did not experience any pain or discomfort during the three and one-half hour period she worked on 2 August 1992. However, that evening plaintiff felt soreness and stiffness in the right side of her neck, right shoulder and arm and later pain. Over the next two to three days the pain grew progressively worse. Plaintiff then reported an injury occurring on 2 August 1992 to her supervisor, Greg Spencer, and on 6 August 1992 she sought medical treatment at Arrowood Clinic. Plaintiff injured her back as a direct result of the work assigned to her by defendant-employer during the three and one-half hour period on 2 August 1992. Plaintiff has established that her injury occurred during a cognizable period of time while she was performing a series of contemporaneous activities such as lifting, pushing and pulling heavy boxes and lifting overhead.
7. Plaintiff had a pre-existing injury to the right side of her neck and her right shoulder due to a 1989 automobile accident. As a result of the automobile accident plaintiff received treatment by Dr. Robert B. Anderson of the Miller Orthopaedic Clinic from 28 September 1989 through 8 November 1989 for cervical strain and spasms. Plaintiff subsequently received treatment at Arrowood Medical Clinic for complaints of recurrent muscle strain and tenderness over the right trapezius region and neck on 20 June 1991. Plaintiff missed two days from work in June of 1991 and also underwent physical therapy. Plaintiff's prior injury had not caused any incapacity to earn wages since June, 1991.
8. As a result of her 2 August 1992 back injury plaintiff sought medical care for continued pain from Dr. William Beaver, an orthopaedic surgeon, at Miller Clinic on 21 August 1992. Dr. Beaver prescribed home cervical traction and medication. On 17 September 1992 plaintiff was found by Dr. Beaver to have improved immensely with some tenderness over the trapezius area, but no radicular pain and he released her from his care.
9. After plaintiff was released from Dr. Beaver's care, her neck and shoulder felt better with little or no right-sided pain. Soon thereafter, her pain returned and extended into her right wrist and hand. Her hand and arm sometimes became numb. Plaintiff did not return to Dr. Beaver because she did not believe that her right arm, wrist and hand pain was connected to her neck injury.
10. Defendant-carrier initially processed and paid this claim as a "medical only" claim, as there was no wage loss from 2 August 1992 through 17 September 1992. Liability was subsequently denied.
11. Plaintiff waited until February 1993 to return to the doctor because she had no health insurance until this time, and did not want to visit a doctor until she had obtained health insurance.
12. On 5 February 1993 plaintiff sought medical care at Mercy South Hospital emergency room, where she complained of pain from the right elbow to wrist with intermittent numbness in the right hand. The emergency room doctor noted that plaintiff reported that she had a past history of a `pinched nerve' in August, 1992. The doctor believed that plaintiff had carpal tunnel syndrome and gave her a lace up splint. He also referred her to Dr. William Moose, Jr. at Carolina Hand Center.
13. Plaintiff's first visit with Dr. Moose was on 9 February 1993. She gave a history of a cervical spine injury at work which resulted in right arm numbness and pain which had resolved. She also reported a past history of hand numbness due to a cervical spine injury which was treated in August 1991. Dr. Moose suspected carpal tunnel syndrome and sent plaintiff for nerve conduction studies. Plaintiff's nerve conduction studies were normal so Dr. Moose scheduled plaintiff for an MRI scan of her neck. After viewing plaintiff's cervical MRI, Dr. Moose determined that plaintiff's problem was in her cervical spine, and referred plaintiff to Dr. Nick E. Grivas, a neurosurgeon. On 23 February 1993 Dr. Moose authorized plaintiff to remain out of work until seen by Dr. Grivas.
14. On 6 March 1993 plaintiff was laid off from her job with defendant-employer, allegedly due to an economic slowdown and company-wide elimination of positions of a like nature. The only other position affected by the cut back was a similar "vacant" position in another office which was subsequently not filled.
15. Plaintiff's first appointment with Dr. Grivas was on 1 March 1993. Dr. Grivas determined that plaintiff had a ruptured disc with nerve root compression at the C5-C6 level and also spondylosis. He scheduled plaintiff for surgery on 9 March 1993. Dr. Grivas monitored plaintiff's progress after the surgery until 11 October when he felt that she had reached maximum medical improvement. He rated plaintiff with a fifteen percent (15%) permanent partial impairment to her cervical spine at that time and released her to return to work. Dr. Gravis authorized plaintiff to remain out of work from 1 March 1993 through 11 October 1993.
16. After taking into consideration plaintiff's automobile accident of 1989 and the subsequent recurrence of right neck and arm pain in 1991, Dr. Gravis opined, and the undersigned find, that plaintiff's injury by accident of 2 August 1992 significantly aggravated the preexisting condition in her neck, and that the resulting surgery was casually related to said work related accident.
17. Plaintiff worked part-time at a child daycare center from 21 September 1993 to 27 October 1993. She worked four hours per day for five days per week and was paid $5.25 per hour. She left this employment because it was too stressful on her neck. Plaintiff next worked part-time from 2 November 1993 through 21 December 1993 as a secretary for a church. She worked there three hours per day for three days per week and was paid $6.50 per hour. She left this employment because she was offered a full-time clerical position paying $8.76 per hour. She worked in this position from 26 December 1993 until 17 June 1994 when she had to leave for reasons not connected with her 2 August 1992 injury. At the time of the hearing plaintiff was not employed.
18. As a result of her 2 August 1992 injury plaintiff was incapable of earning wages in any employment from 23 February 1993 through 20 September 1993. Plaintiff was capable of earning diminished wages from 21 September 1993 through 21 December 1993.
19. Plaintiff's disability ended on 26 December 1993 when she returned to work with another employer earning the same or greater wages.
************
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Back injuries that occur contemporaneously over a cognizable period of time fit within the definition of N.C. Gen. Stat. § 97-2 (6). Although plaintiff cannot point to a specific incident in time during the morning of 2 August 1992 that caused the injury to her back, she can point to a series of contemporaneous events which could have caused her injury. Plaintiff presented evidence that established that over a period of three and one-half hours she pushed and pulled boxes weighing over two hundred pounds across a cement floor, and reached overhead to hand boxes weighing up to twenty-five pounds to a co-worker who was standing on a ladder. Later that same day plaintiff began to experience pain, stiffness and soreness in the right side of her neck, and in her right shoulder and arm. Due to her activity on 2 August 1992, plaintiff suffered a compensable injury by accident arising out of and in the course of her employment which was the direct result of a specific traumatic incident of the work assigned. This injury by accident aggravated plaintiff's pre-existing neck problem and ultimately required surgery. N.C. Gen. Stat. § 97-2 (6); Richards v. Town of Valdese,92 N.C. App. 222 (1988).
2. Plaintiff is entitled to payment by defendants of temporary total disability compensation benefits at the rate of $232.15 per week from 23 February 1993 through 20 September 1993. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment by defendants of temporary partial disability compensation benefits at the rate of sixty-six and two-thirds percent of the difference between her average weekly wage before 2 August 1992 and the average weekly wage she was able to earn during the time period from 21 September 1993 through 21 December 1993. N.C. Gen. Stat. § 97-30.
4. Plaintiff is entitled to payment by defendants of permanent partial disability compensation benefits at the rate of $232.15 per week for forty-five weeks for the fifteen percent (15%) permanent partial impairment to plaintiff's cervical spine. N.C. Gen. Stat. 97-31 (23).
5. Defendants are entitled to a credit for the unemployment insurance compensation benefits plaintiff was paid for the periods during 1993 when she was out of work. N.C. Gen. Stat. § 97-42.1.
6. Plaintiff is entitled to payment by defendants of all reasonable medical expenses incurred or to be incurred as a result of her compensable injury by accident of 2 August 1992. N.C. Gen. Stat. § 97-25.
**************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to counsel fees and defendants' credit for unemployment insurance compensation benefits, defendants shall pay to plaintiff temporary total disability benefits at the rate of $232.15 per week from 23 February 1993 through 20 September 1993. As this amount has accrued, it shall be paid in a lump sum.
2. Subject to counsel fees and defendants' credit for unemployment insurance compensation benefits, defendants shall pay to plaintiff temporary partial disability benefits at the rate of $162.15 per week for the period from 21 September 1993 through 27 October 1993, and $193.15 per week for the period from 2 November 1993 through 21 December 1993. As these amounts have accrued, they shall be paid in a lump sum.
3. Subject to counsel fees, defendants shall pay plaintiff in a lump sum permanent partial disability benefits at the rate of $232.15 per week for 45 weeks for the fifteen percent impairment to plaintiff's cervical spine.
4. Defendants are due a total credit of $1,810.00 for unemployment insurance benefits paid to plaintiff.
5. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of plaintiff's injury by accident of 2 August 1992 when bills for same have been submitted and approved through procedures adopted by the Commission.
6. A reasonable attorney's fee of twenty-five percent (25%) of the accrued compensation due plaintiff herein is approved for plaintiff's counsel. Said attorney's fee shall be deducted from the compensation due plaintiff and paid directly to her counsel.
7. Defendants shall pay the costs due this Commission, including an expert witness fee of $250.00 to Nick E. Grivas, M.D.
 S/ ________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ LAURA K. MAVRETIC COMMISSIONER
DISSENTING:
S/ ________________ J. RANDOLPH WARD COMMISSIONER
BSB:be